IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRENDA FEGGINS,

                              Plaintiff,                    OPINION AND ORDER

        v.
                                                            11-cv-073-wmc

RELIANCE STANDARD LIFE
INSURANCE COMPANY and
ST. FRANCIS HOSPITAL GROUP, INC. LONG
TERM DISABILITY INSURANCE PROGRAM,

                        Defendants.

        On January 18, 2012, this court issued an order allowing plaintiff Brenda Feggins

to amend her complaint, as well as indicating that it may grant summary judgment in

plaintiff's favor because of defendant Reliance Standard's apparent failure to comply with

ERISA's notice and appeal requirements.  *See* Opinion and Order (dkt. #55).  Because

the court based this order on procedural grounds not squarely addressed by the parties'

summary judgment briefs, however, the court requested another round of briefing.  *See*

Fed. R. Civ. P. 56(f)(2) (a court may grant a summary judgment motion "on grounds not

raised by a party," only "[a]fter giving notice and a reasonable time to respond.").  The

plaintiff now having amended her complaint and the parties having briefed the

procedural issue, the court finds that its provisional order accurately stated the law and

facts here.  Accordingly, the court will grant summary judgment to plaintiff, remanding

the question of plaintiff's benefits eligibility back to Reliance Standard.

OPINION[1]

## I.  Legal Standard

"ERISA sets certain minimum requirements for procedures and notification when a plan administrator denies a claim for benefits. In a nutshell, ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator."  *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992) (citing 29 U.S.C. § 1133).

A determination of whether review has been "full and fair" must be made in context.   While an administrator's "substantial compliance" with this requirement is sufficient to uphold his decision, *id.* at 690, the administrator must always satisfy "the persistent core requirements of review intended to be full and fair," including "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Brown v. Retirement Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 534 (7th Cir. 1986) (*quoting Grossmuller v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858 n.5 (3d Cir. 1983)).

## II.  The Court's Provisional Opinion

In its provisional opinion and order, the court found fault with the notice Reliance Standard provided to plaintiff in the course of terminating her disability benefits.  Under

---

[1] For the purposes of this opinion, the court adopts the detailed statement of undisputed facts set forth in its provisional order (dkt. #55).

the terms of the Plan, plaintiff was required to prove that she could not "perform the material duties of any occupation" to receive benefits.  "Any occupation" is defined by the Plan as "one that the Insured's education, training or experience will reasonably allow."  Plaintiff initially submitted her doctors' recommendation that she be restricted to "sedentary" activity with limited use of her limbs.

Reliance Standard rejected plaintiff's claim on the grounds that it had identified three occupations for which she was qualified, both physically and vocationally: "Tumor Registrar, Research Assistant, [and] Optometric Assistant."  Reliance Standard noted that "vocational staff was also able to identify other [qualified] occupations in addition to [Tumor Registrar, Research Assistant, and Optometric Assistant]," inviting plaintiff to order from Reliance Standard "copies of all documents [and] records . . . relevant to [her] claim."

Plaintiff appealed, presenting evidence that she could not engage in any of the three occupations identified by Reliance Standard because they all involved repetitive activity that would aggravate her arm pain.  In rejecting the appeal, Reliance Standard withdrew as justification all three occupations previously relied upon, but asserted that plaintiff was capable of working as a "Cardiac Monitor Technician."  This occupation had been identified in Reliance Standard's internal analysis of the claim, but not specifically mentioned in the denial letter sent to plaintiff.  Reliance Standard informed plaintiff that its decision was final; there would be no opportunity for further internal appeal.

The court found that by switching occupations at the appellate review stage, Reliance Standard appeared to have denied plaintiff an opportunity to show that she was

incapable -- both physically and by dint of education and training -- of being a Cardiac Monitor Technician.  If this were so, the court further found that plaintiff was thus denied an opportunity for a "full and fair review" by Reliance Standard.

## III. ERISA's Requirement of a Full and Fair Review

In the subsequent round of briefing, defendants challenge the court's provisional analysis on several grounds, which the court addresses below.

### A. Adequate Notice of Reasons for the Initial Denial

Defendants first take issue with the notion that the claim administrator failed to "afford the beneficiary . . . a sufficiently precise understanding of the ground for the denial to permit a realistic possibility of review."  *Halpin*, 962 F.2d at 694 (7th Cir. 1992).  In its provisional order, this court found that

> the initial benefit denial letter put plaintiff on notice that Reliance Standard's "vocational staff was also able to identify other [qualified] occupations in addition to [Tumor Registrar, Research Assistant, and Optometric Assistant]," inviting Feggins to order from Reliance Standard "copies of all documents [and] records . . . relevant to [her] claim." (FEG000457.)  In these materials, Feggins might have found Ms. Barach's reference to Cardiac Monitor Technician as a possible alternative occupation, but defendants cannot credibly assert that she should have followed this attenuated chain of deduction to a determination that she must provide evidence and argument on appeal that demonstrated her inability to work as a Cardiac Monitor Technician, much less any of the "other occupations" casually mentioned.  And she certainly could not have anticipated or responded to Barach's secondary analysis conducted after the parties' submissions and less than 3 weeks before denial of the appeal, which made Cardiac Monitor Technician the sole reason for denying her benefits.

4

(Dkt. #55, pp. 22-23.)

Defendants now argue that the reference in its initial denial letter to "our vocational staff" being "able to identify other occupations" was enough to give plaintiff a precise understanding of Reliance Standard's grounds for denial, citing as support this court's decision in *Porter v. Standard Insurance Co.*, No. 10-cv-163-bbc, 2010 LEXIS 125502 (W.D. Wis. Nov. 24, 2010).   In *Porter*, the claimant protested that the administrator had "moved the target" on appeal by failing to articulate a clear explanation of the additional information necessary to perfect her claim in the initial denial letter. *Id.* at *42.   In rejecting this argument, this court found that while the "initial decision letter could have been more specific," the administrator was nevertheless substantially compliant because the letter explained why he was not convinced by claimant's medical evidence and "made *specific requests* for information that might help to establish disability under the plan." *Id.* at *43 (emphasis added).   Unlike the administrator in *Porter,* Reliance Standard provided *no* specific communication to plaintiff asserting that she could work as a Cardiac Monitor Technician; there was only a vague reference to other findings by "vocational staff," presumably somewhere in the decision-making record.   If anything, *Porter* highlights the inadequacy of Reliance Standard's denial notice.

Alternatively, defendants argue that notice was adequate because plaintiff *actually knew* that Reliance Standard's initial denial was based on an assertion that she could work as a Cardiac Monitor Technician.   The problem with this argument is that the administrative record indicates the opposite: on appeal, plaintiff attempted to prove that

5

she was incapable of performing the three occupations explicitly listed in the denial letter; she never mentioned Cardiac Monitor Technician.

Reliance Standard suggests that the court should ignore the administrative record when it is contradicted by specific allegations made in plaintiff's complaint. This might be correct as far as it goes: allegations in a complaint are in the nature of admissions, binding upon the parties who make them. But whatever plaintiff's original complaint may have said, Reliance Standard overlooks the fact that she was subsequently granted leave to amend it. As of the date of this summary judgment decision, the operative complaint now alleges (accurately, as it happens) that Reliance Standard asserted she could perform three occupations in its initial denial. (Dkt. #56.) Reliance Standard may criticize this court's decision to allow amendment of the complaint to conform with the record, both after summary judgment motions have been filed and for the purposes of supporting an argument that the court has raised *sua sponte*. Granting permission to amend was, however, within the court's discretion, as well as consistent with the federal rules' liberal policy of allowing amendment of the complaint for good cause, even as late as trial (*see* Fed. R. Civ. P. 15(b)).

### B. Administrator Did Not Alter Its Reasons for Denial on Appeal

Defendants next argue that any failure to explicitly mention Cardiac Monitor Technician in the initial denial letter did not prejudice plaintiff, because Reliance Standard did not change its reasons for denial on appeal. This ignores the fact that each occupation plaintiff was found capable of performing constituted an independently

sufficient reason to deny her claim.  Thus, swapping out all three originally-proposed, distinct occupations for a new, independent occupation amounts to advancing a new reason to deny the claim.[2]

Defendants also maintain that Reliance Standard's "appeal decision was based on the exact same rationale" and that citing to the occupation of Cardiac Monitor Technician "*is simply a new fact supporting the same reason for denial*." (Dkt. #57 p.6 (emphasis original).)   This argument contains at least two critical flaws.  *First,* the argument is mistaken as a matter of law to the extent that it suggests a plan administrator may rely on new facts for the first time in a final appeals decision.  Full and fair review entails "having an opportunity to address the accuracy and reliability of [the opposing side's] evidence." *Brown,* 797 F.2d at 534.  Here, it is necessary to distinguish new facts (which cannot be asserted on appeal) from new opinions interpreting those facts (which can be asserted).

"Permitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal -- even though those reports contain no new factual information and deny benefits on the same basis as the initial decision -- would set up an unnecessary cycle of submission, review, re-submission, and re-review." *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007).  Instead, courts have adopted the sensible approach articulated by the Tenth Circuit in *Metzger*:  for the purposes of ensuring full and fair review, a claimant is entitled to rebut any new fact, but

---

[2]  The record indicates that "Cardiac Monitor Technician" has its own unique physical requirements and technical and educational qualifications.

entitled to rebut new expert reports only if they "analyze evidence unknown to the claimant or contain new factual information or novel diagnoses." 476 F.3d at 1167-68.

*Second*, defendants incorrectly assert as a matter of fact that when Reliance Standard told plaintiff she could perform the job Cardiac Monitor Technician, Reliance did not provide a new reason for denying benefits. Casting aside the strained definition of "new reason" advanced by defendants, they are simply arguing that Cardiac Monitor Technician was a highly obvious and foreseeable (albeit new) reason in light of the reasons previously articulated in the initial denial letter.[3] On this basis -- that the new reason was highly foreseeable -- defendants attempt to distinguish the four cases cited in this court's original provisional opinion, all of which held that when an administrator relies on a new reason on appeal, a claimant is denied a full and fair review.

In fairness, defendants correctly point out that in each of those four cases, the administrator completely switched directions on the benefits applicant. For example, in *Gagliano v. Reliance Standard Life Insurance Co.*, 547 F.3d 230 (4th Cir. 2008), the initial termination letter purported to deny Mr. Gagliano benefits because he was physically capable of returning to work, while the appeal letter purported to deny him benefits because of the plan's pre-existing conditions limitation. *Id.* at 236-37. Here, defendants argue, Reliance Standard merely switched potential job categories, while always claiming

---

[3]  By the logic of defendants' argument, there would appear to be no such thing as a "specific reason," only broad categories of reasoning. For example, "the plaintiff is not disabled"; "the plaintiff can perform a different job"; or "the plaintiff had a pre-existing condition." Defendants claim that as long as the administrator stays within the same category of reasoning on appeal, he can rely on an unlimited number of specific, new justifications not previously articulated. (Dkt. #57, p. 6.) How this amounts to "full and fair review" defendants do not attempt to explain.

that plaintiff was still capable of "some occupation."  As a result, defendants reason, the basis for denial was not "new" at least in the sense that it could have been anticipated by plaintiff.  Defendants' argument, however, simply re-phrases a question already addressed by this court: whether Reliance Standard provided *adequate* notice and opportunity to respond to plaintiff as to the actual basis for the denial of benefits.  The court believes that it did not.

Ultimately, this is a distinction of degree, not of kind.  Reliance Standard failed to provide plaintiff adequate notice that it was denying benefits on the belief that she could work as a Cardiac Monitor Technician.  Had they done so, perhaps she could have provided the administrator with conflicting facts and argument, just as she had done (apparently) successfully to the original three job categories.

### C. Administrator Considered the Claimant's Ability to Work

Defendants finally argue that plaintiff was not prejudiced on appeal by Reliance Standard's new explanation since it was her burden to proof she could not perform "any occupation" and Reliance went beyond the call of duty in conducting a vocational review in the first place.  Defendants assert, and the court agrees, that there is no categorical rule requiring a plan administrator to provide a vocational review.  At the same time, the administrator (1) must not act "arbitrarily and capriciously," and (2) must articulate some reasoned explanation for rejecting a claim.  Where the claim hinges on whether a plaintiff is capable of performing an occupation (as it surely does here), some sort of comparison between the requirements of the occupation and the applicant's capabilities

is necessary. Thus, whether it is termed a "vocational review" or something else, a claims administrator often *is* required to reflect a minimal vocational analysis or, at least, reflect in its reasoning an explanation for finding that the claimant's capabilities meet the occupational requirements.[4]

Regardless, the administrator carries the burden of articulating *why* it believes an applicant is capable (both physically and by dint of education and training) of performing a given occupation, even when the plan requires that the claimant prove she is incapable of performing "any occupation." If it were otherwise, the Plan would be taking the untenable position that it is plaintiff's burden to submit (at the outset) proof as to why she cannot perform each and every one of the hundreds of jobs listed in the Dictionary of Occupational Titles. Common sense dictates that the "any occupation" requirement means only that: (1) the administrator is allowed to suggest any occupation of his choosing as grounds for denying a benefits claim; and (2) the claimant has the burden to show why she cannot do that job. Once the claimant has had her say, the administrator must still offer a rational explanation as to why it believes the claimant is capable of performing the job.[5]

---

[4]   *Tate v. Long Term Disability Plan For Salaried Emp. of Champion Int'l Corp. # 506*, 545 F.3d 555, 561 (7th Cir. 2008) ("The Plan protests that it should not be required to review vocational evidence in making disability determinations. But logically, the Plan could have made a reasoned determination that Tate was not "totally disabled" only if it relied on evidence that assessed her ability to perform a job for which she is qualified by education, training, or experience. This means the Plan must have made a reasonable inquiry into Tate's medical condition as well as her vocational skills and qualifications for its decision denying benefits to be upheld."), *rev'd on other grounds, Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010).

[5]   Defendants cite *Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345 (N.D. Fla. 2004), for the proposition that when the evidence shows "a claimant is capable of light and sedentary

10

## IV. Remedy

In this court's provisional opinion, it indicated an intention to follow the Seventh Circuit's usual remedy for an arbitrary and capricious termination of benefits: restoration of the *status quo*, which here means the reinstatement of benefits. *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003). Defendants correctly point out that this general rule does not apply in cases where the error identified is procedural, rather than substantive. *Quinn v. Blue Cross & Blue Shield Assoc.*, 161 F.3d 472, 477 (7th Cir. 1998) ("when a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case ... is to remand for further findings or explanations"), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2157 (2010); *Love v. National City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009). Therefore, the court will remand to Reliance Standard for proper consideration of plaintiff's eligibility for benefits.

## V. Attorneys' Fees

The court also provisionally indicated that if plaintiff prevailed on the grounds identified by the court, an award of attorneys' fees would be proper. Having now

---

work and the claimant's previous employment was not highly skilled or technical, the plan administrator need not conduct a vocational assessment or consider vocational evidence to determine that the claimant is disabled under the 'any occupation' standard." *Id*. at 1359. *Hufford* is, however, distinguishable from this case on multiple grounds, including that Feggins is not capable of "light" work and her previous employment as a medical technician was arguably "technical" in nature. Moreover, *Hufford* is not controlling precedent, and this court declines to extend its reasoning to this case, at least as defendants read it, because it makes presumptions that would deny plaintiff (and any other claimant arguing an inability to perform "any occupation" as defined in a plan) her statutory right to prove that she *is* incapable of performing "any occupation."

11

affirmed the substance of its provisional opinion, the court finds that an award of attorneys' fees to plaintiff is merited.

Plaintiff has submitted a proposed award of attorneys' fees and costs. (Dkt. #59.) Defendants filed a response objecting to the proposed award principally because it is support only by "block billing" records and the time spent on various tasks was excessive. (Dkt. #63.) First, the detailed itemized time records provided simply are not accurately characterized as block billing. (Dkt. #59-1, pp. 2-5.) Second, the court finds the time spent and hourly rate to be within a range of reasonableness given the complexity and quality of counsel's submissions. (Notably, defendants do not produce records showing the time spent by its counsel on similar tasks.) Finally, the court sees no basis to deny compensation for preliminary legal work performed before November 30, 2010, but will reduce the fee award by $840 for time spent in unsuccessfully opposing defendants' motion to strike. After consideration of the parties' submissions and the case as a whole, the court will, therefore, award fees in the amount of $22,200.00 and costs in the amount of $821.35, for a total of $23,021.35.

## ORDER

IT IS ORDERED that:

1) defendants Reliance Standard Life Insurance Company and St. Francis Hospital Group's motion for summary judgment (dkt. #9) is DENIED;

2) plaintiff Brenda Feggins' motion for summary judgment (dkt. #12) is GRANTED;

3) defendants Reliance Standard Life Insurance Company and St. Francis Hospital Group's motion for reconsideration (dkt. #57) is DENIED;

4) this case is REMANDED to defendant Reliance Standard to conduct a full and fair review of plaintiff's qualification for benefits and determine the appropriate amount of benefits due, if any; and

5) plaintiff is awarded attorneys' fees and costs in the total amount of $23,021.35 as the prevailing party.

Entered this 5th day of September, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge